**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

UNITED STATES OF AMERICA,

        **Plaintiff,**

        v.

CARLOS FIGUEROA-GIBSON,

        **Defendant.**

CRIM. NO. 16-802 (RAM)

<u>**OPINION AND ORDER**</u>

RAÚL M. ARIAS-MARXUACH, United States District Judge

    Pending before the Court is Defendant Carlos Figueroa-Gibson's ("Defendant" or "Figueroa") *Motion Seeking Appointment of Counsel and Reduction in Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)* ("*Motion for Compassionate Release*"). (Docket No. 107). For the reasons set forth below, the requests for compassionate release and appointment of counsel are **DENIED WITHOUT PREJUDICE.**

## I.   BACKGROUND

    On December 21, 2016, a Grand Jury returned a one-count indictment charging Mr. Figueroa with attempted sex trafficking of children, in violation of 18 U.S.C. §§ 1591(a)(1), 1591(b)(1), and 1594(a). (Docket No. 10). On January 25, 2018, Defendant pled guilty to the lesser included offense of attempted sex trafficking of a minor between the ages of fourteen and eighteen years, a violation of 18 U.S.C. § 1591(b)(1). (Docket No. 78). After

deferring the sentencing hearing to allow Mr. Figueroa to complete his studies, the Honorable Daniel R. Domínguez sentenced Defendant on June 21, 2021, to 120 months' imprisonment.[1] (Docket Nos. 91 and 98). Following his release, Defendant must serve a supervised release term of five years. (Docket No. 98). Mr. Figueroa's anticipated release date from the custody of the Bureau of Prisons ("BOP") is January 14, 2030.[2] To date, he has served approximately twenty percent of his sentence. (Docket No. 122 at 2).

On July 19, 2022, Defendant filed, *pro se*, his *Motion for Compassionate Release*.[3] (Docket No. 107). In his motion, Mr. Figueroa requested appointment of counsel and alleged that his health conditions, which include a high body mass index ("BMI") of 31, anxiety, depression, asthma, and prior COVID-19 infection, constitute extraordinary and compelling circumstances that warrant a reduction in his sentence. Id. at 2-7. Additionally, he avers that the COVID-19 vaccine is less effective over time and against virus variants. Id. at 5-6. Defendant further claims that he is

---

[1] The case was assigned to the undersigned on January 10, 2024. (Docket No. 134).

[2] BOP, *Inmate Locator*, https://www.bop.gov/inmateloc/ (last visited January 29, 2024).

[3] The Court notes that several of the attachments to both the *Motion for Compassionate Release*, (Docket No. 107), and the *Reply*, (Docket No. 131), are in the Spanish language. These documents may not be considered by the Court because all filings, pleadings, and proceedings in the United States District Court for the District of Puerto Rico must be conducted in the English language. *See* 48 U.S.C. § 864; L. Civ. R. 5(c); L. Crim. R. 112.

the sole available caregiver for his adoptive mother, who is
eighty-seven and his biological grandmother. Id. at 7; (Docket No.
131 at 14). He further asserts that the factors laid out in 18
U.S.C. § 3553(a) favor release. (Docket No. 107 at 7-9). Finally,
appended to the *Motion for Compassionate Release* is a January 19,
2022, letter from Mr. Figueroa to Warden Joseph requesting that
the BOP file a motion for compassionate release on Defendant's
behalf. (Docket No. 107-1 at 2).

On August 15, 2023, the United States of America (the
"Government") filed a *Response in Opposition* to Defendant's
petition arguing that Mr. Figueroa lacks an extraordinary and
compelling reason warranting release, that he still represents a
significant danger to the safety of the community, and that he
only served a small portion of his sentence. (Docket No. 122 at
1). The Government stated that BOP medical records indicate
Defendant suffers from asymptomatic syphilis, asthma, major
depressive disorder, and chronic rhinitis;[4] furthermore, he has
been fully vaccinated against COVID-19. (Docket No. 122 at 3). The
Government also avers that the BOP took necessary measures to

---

[4] Defendant does not address rhinitis in either his original *Motion for
Compassionate Release* or his *Reply*; accordingly, the Court does not include it
in the analysis of his medical circumstances.

contain COVID-19 at United States Penitentiary ("USP") Atlanta, where Mr. Figueroa is currently incarcerated. Id. at 3-6.

Defendant subsequently filed a *Reply* with the assistance of counsel on November 17, 2023. (Docket No. 131). In addition to reiterating the arguments in his original *Motion for Compassionate Release*, Mr. Figueroa further claims that he has not been involved in any disciplinary infractions and proposes a release plan. Id. at 2, 12-19.

## II.  APPLICABLE LAW

Ordinarily, a court may not modify a term of imprisonment once it is imposed. *See* 18 U.S.C. § 3582(c). However, it may grant compassionate release to a defendant subject to certain requirements. Id. § 3582(c)(1)(A).

Pursuant to section 3582(c)(1)(A), a court may not modify a final sentence unless a defendant has "fully exhausted all administrative rights to appeal a failure of" the BOP to bring a motion for reduction of sentence on his behalf or if thirty days have elapsed "from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." Id. Even if these conditions are met, the district court must consider "the factors set forth in section 3553(a) to the extent that they are applicable," and there **must still be** "extraordinary and compelling reasons" warranting a reduction. Id. § 3582(c)(1)(A)(i); *see also*

United States v. Saccocia, 10 F.4th 1, 4 (1st Cir. 2021) (providing general principles for evaluating compassionate release motions). The defendant bears the burden of establishing that extraordinary and compelling reasons exist, that he is no longer a danger to the community, and that the section 3553(a) factors favor release. United States v. Galiany-Cruz, 2023 WL 6458535, at *1 (1st Cir. 2023); United States v. Miranda-Rojas, 2023 WL 7181650, at *1 (1st Cir. 2023).

In United States v. Ruvalcaba, the First Circuit addressed whether district courts were bound by the Sentencing Guidelines Policy Statement when deciding motions for compassionate release. 26 F.4th 14 (1st Cir. 2022). Because the most relevant policy statement at the time Ruvulcaba was decided had not been amended since November 2018, the First Circuit held that district courts had "discretion, unconstrained by any policy statement currently in effect, to consider whether a prisoner's particular reasons are sufficiently extraordinary and compelling to warrant compassionate release." Id. at 23 (citation omitted).

However, on November 1, 2023, the United States Sentencing Commission's ("USSC") policy statement on motions for compassionate release initiated by prisoners took effect. See U.S.S.G. § 1B1.13. Since the USSC has provided updated guidance, "district courts addressing such motions not only will be bound by

the statutory criteria but also will be required to ensure that their determinations of extraordinary and compelling reasons are consistent with that guidance." Ruvulcaba, 26 F.4th at 23-24. The First Circuit expects district courts "to take heed of" the new policy statement when determining whether a defendant is eligible for compassionate release. United States v. Rivera-Rodríguez, 75 F.4th 1, 18 n.22 (1st Cir. 2023). Accordingly, the "window" in during which Ruvucalba's holding regarding policy statements controlled and district courts were granted broad discretion has "clos[ed]." See United States v. Gonzalez, 68 F.4th 699, 704 n.2 (1st Cir. 2023) (noting the gap in guidance on prisoner-initiated motions and the then-upcoming amendments to U.S.S.G. § 1B1.13).

The policy statement outlines six circumstances that individually or in combination may constitute extraordinary and compelling reasons warranting relief: (1) the defendant's medical circumstances; (2) the defendant's age; (3) the defendant's family circumstances; (4) whether defendant was a victim of abuse while incarcerated; (5) "other reasons" similar in gravity to the preceding four reasons; and (6) whether the defendant received an unusually long sentence. U.S.S.G. § 1B1.13(b). Moreover, the court must determine that the "defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." Id. § 1B1.13(a)(B)(2).

### III. ANALYSIS

The Court begins by addressing a threshold matter. It initially appears that Defendant has met the administrative exhaustion requirement of section 3582(c)(1)(A). Mr. Figueroa states that he submitted a request that the warden of his facility file a motion on his behalf on January 7, 2022, and that more than thirty days elapsed without a reply. (Docket No. 107 at 2).[5] The Government presents no argument or evidence to the contrary. The Court therefore proceeds to evaluating the merits of the *Motion for Compassionate Release*. *See* <u>United States v. Quirós-Morales</u>, 83 F.4th 79, 84 (1st Cir. 2023) (so doing); <u>United States v. Texeira-Nieves</u>, 23 F.4th 48, 53 (1st Cir. 2022) (holding the administrative exhaustion requirement is a "non-jurisdictional claim-processing rule").

The Court denies Mr. Figueroa's *Motion for Compassionate Release* for two reasons. First, he fails to present extraordinary and compelling circumstances, either individual or in combination,

---

[5] The Court notes, however, that Defendant's *Motion for Compassionate Release* includes arguments about vaccine efficacy that he did not raise in his initial request to the warden. *Compare* Docket No. 107-1 at 2 (request to BOP), *with* Docket No. 107 at 4-6 (*Motion for Compassionate Release* sections regarding vaccines). The First Circuit has not yet resolved the "question of whether and to what extent issue exhaustion applies to judicial review of compassionate release motions," which is "freighted with uncertainty." <u>United States v. Texeira-Nieves</u>, 23 F.4th 48, 53 (1st Cir. 2022). Because the Government did not address the topic of administrative exhaustion in its *Response in Opposition*, the Court deems any arguments of issue exhaustion waived and considers instead the substantive issues raised in Defendant's *Motion for Compassionate Release*.

that would justify release. Second, he has not shown that release is warranted given the factors set out in 18 U.S.C. § 3553(a). Defendant's request for appointment of counsel is denied as moot since defense counsel has subsequently entered an appearance on Mr. Figueroa's behalf. *See* (Docket No. 111).

**A. Defendant does not present extraordinary and compelling reasons justifying release.**

Based on Defendant's petition, the only possible extraordinary and compelling reasons in this case are his medical and family circumstances. The Court addresses each in turn.

### i.   Defendant's Medical Circumstances

The Court construes Mr. Figueroa's *pro se Motion for Compassionate Release* liberally. He is twenty-nine years old and claims no terminal illnesses, functional or cognitive impairments, or health deficiencies due to aging. However, Defendant does allege that he suffers from obesity, asthma, and anxiety/depression. He furthermore asserts that he contracted COVID-19 while incarcerated and was left untreated. As such, these medical and physical conditions may amount to extraordinary and compelling reasons justifying a sentence reduction under the following circumstances:

> (B) The defendant is—
>     (i) suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a

correctional facility and from which he or she is not expected to recover.

(C) The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death.

(D) The defendant presents the following circumstances—
      (i) the defendant is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority;
      (ii) due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease or the ongoing public health emergency described in clause (i); and
      (iii) such risk cannot be adequately mitigated in a timely manner.

U.S.S.G. § 1B1.13(b)(1)(B)-(D). Defendant's medical conditions do not amount to extraordinary and compelling circumstances for the following reasons.

First, turning to the issue of Defendant's obesity, the Centers for Disease Control and Prevention ("CDC") defines obesity as a BMI between 30 and 40 kg/m$^2$ and severe obesity as a BMI of 40

kg/m$^2$ or higher.[6] The CDC notes that the "risk of severe illness
from COVID-19 increases sharply with higher BMI." Id. However,
district "courts have denied compassionate release motions based
on obesity when it is not shown that the defendant's conditions
diminish their ability to care for themselves." United States v.
Ayala-Martinez, 2022 WL 13946049, at *3 (D.P.R. 2022) (citation
omitted). Even in combination with other conditions, obesity may
not rise to the level of an extraordinary or compelling reason for
release. See id. (denying compassionate release to asthmatic,
obese defendant who was fully vaccinated).

In his *Motion for Compassionate Release*, Mr. Figueroa stated
his BMI was 31, which is at the lower end of the obesity spectrum.
The Government avers that this is no longer true, and that
Defendant's BMI is now 28.2. (Docket No. 122 at 17). In Defendant's
latest filing, he also acknowledges that while his BMI is 28.27,
he is still considered overweight and may still be at risk. (Docket
No. 131 at 8). **Critically, however, Mr. Figueroa does not argue or
show that his weight, regardless of whether he is obese or
overweight, prevents him from caring for himself.** Defendant's
approximately thirty-pound weight loss while incarcerated instead

---

[6] CDC, *People with Certain Medical Conditions* (May 11, 2023),
https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.

demonstrates that his obesity is being managed. Accordingly, Mr.
Figueroa's prior obesity does not warrant compassionate release.
*See, e.g.*, <u>Ayala-Martinez</u>, 2022 WL 13946049, at *3 (finding
defendant with a BMI of 32 whose obesity was being treated did not
warrant compassionate release on grounds of obesity).

    <u>Second</u>, Mr. Figueroa has been diagnosed with asthma but does
not specify its severity. The CDC advises that moderate to severe
asthma can constitute a chronic lung disease that heightens the
risk of becoming very sick from COVID-19.[7] Though Mr. Figueroa
claims the prison environment makes it difficult to manage his
asthma, he also states that his condition is "stable but chronic."
(Docket No. 131 at 8-9). His medical records indicate that he uses
an Albuterol inhaler, to be used "as needed to prevent/relieve
asthma attack," as well as a Mometasone Furoate inhaler for daily
use. (Docket No. 122-1 at 96). Though Defendant's use of a daily
inhaler could indicate moderate asthma, his medical records also
show that his asthma is being treated. The records also state that,
in regard to his asthma, he is "clinically stable but has severe
allergy history and would benefit from preventative med[ication],"
which he has been receiving. (Docket No. 122-1 at 108). Because
Mr. Figueroa has not shown that his asthma would either prevent

---

[7] CDC, *supra* note 6.

him from providing self-care or is not being managed, compassionate release on this ground is not warranted. *See* <u>Ayala-Martinez</u>, 2022 WL 13946049, at *3 (denying compassionate release to defendant prescribed same combination of asthma medication as Mr. Figueroa and who was receiving treatment and in stable condition).

<u>Third</u>, Defendant argues his anxiety and depression weakens his immune response. As with obesity and certain kinds of asthma, the CDC notes that a mood disorder like depression can increase the risk of becoming very sick from COVID-19.[8] For his anxiety disorder and major depressive disorder, Mr. Figueroa has been prescribed Citalopram. (Docket No. 122-1 at 15). His medical records indicate that his anxiety disorder is in remission and he has been "doing well on" his medication. <u>Id.</u> 108. Again, because Defendant has not shown either that he cannot perform self-care due to his mental health conditions or that the medical treatment he has received is insufficient, his argument that his anxiety and depression present extraordinary and compelling reasons will not suffice.

<u>Fourth</u>, Defendant references but does not discuss in depth his purported bout of COVID-19. (Docket No. 107 at 3). His medical records include reports of negative COVID-19 tests from July 22,

---

[8] CDC, *supra* note 6.

2021 and early August 2021. (Docket No. 122-1 at 54, 75). Moreover, there appears to be no indication that Mr. Figueroa ever contracted COVID in his medical records. *See generally* id. Because Defendant has not proffered any evidence to support his contention that he was infected by COVID-19 while incarcerated, let alone that he was subsequently untreated, he cannot meet his burden.

Fifth, in his *Reply*, Mr. Figueroa also discusses his recent diagnosis of syphilis, which he argues would be "more effectively managed" outside of a penitentiary. (Docket No. 131 at 6). His medical records show that his asymptomatic syphilis is being treated with medication. (Docket No. 122-1 at 3). Because there is no claim that Defendant's syphilis puts him at higher risk of serious illness, that it prevents him from providing self-care, or that he is not receiving sufficient care while incarcerated, this, too, cannot present an extraordinary or compelling reason for release.

Finally, Mr. Figueroa puts forth two arguments regarding vaccine efficacy, which essentially relate to whether the COVID-19 vaccines are effective against new variants of the virus and over time. He also claims that it is unclear when he might be able to receive booster doses of the vaccine, and indeed, it appears from his medical records that he had not received any booster doses as of April 2023. (Docket No. 131 at 3). The Government, in turn,

proffered that USP Atlanta offers vaccine boosters to inmates and
argues that vaccines protect against variants. (Docket No. 122 at
6, 12). Emerging COVID-19 variants may call the efficacy of
vaccines into question, especially when an individual has not yet
received a booster dose. *See, e.g.,* United States v. Sosa, 2022 WL
1690833, at *3 (S.D.N.Y. 2022) (discussing vaccine efficacy
against Omicron and Delta variants and role of booster doses in
providing additional protection). However, the Court also notes
that there is currently only one case of COVID-19 at USP Atlanta,[9]
which has a population of 1,678 inmates.[10] The low incidence rate
of COVID-19 at USP Atlanta also weighs against release. *See* Ayala-
Martinez, 2022 WL 13946049, at *4 (citing United States v. Bueno-
Beltran, 2022 WL 1442008, at *3 (D.P.R. 2022)) (declining to grant
release to fully vaccinated defendant at a facility with a low
incidence rate of COVID-19). Finally, the Court takes notice of
the fact that as of May 11, 2023, there is no longer a declared
federal public health emergency as to COVID-19.[11] Accordingly,
Defendant has not made a showing under section 1B1.13(b)(1)(D)

---

[9]          BOP,            *Inmate            COVID-19            Data*,
https://www.bop.gov/about/statistics/statistics_inmate_covid19.jsp          (last
accessed January 29, 2024).

[10] BOP, *USP Atlanta*, https://www.bop.gov/locations/institutions/atl/ (last
accessed January 29, 2024).

[11] U.S. Department of Health and Human Services, *COVID-19 Public Health Emergency*
(December 15, 2023), https://www.hhs.gov/coronavirus/covid-19-public-health-
emergency/index.html.

that USP Atlanta is at risk of an outbreak or public health emergency, that he is accordingly at increased risk of severe medical complications or death, and that such risk cannot be timely mitigated.

### ii.  Defendant's Family Circumstances

Extraordinary and compelling reasons also exist when a defendant's parent is incapacitated and "the defendant would be the **only available caregiver** for the parent." U.S.S.G. § 1B1.13(b)(3)(C) (emphasis added). Prior to November 1, 2023, district courts found the need to care for an ailing parent could present an extraordinary and compelling circumstance, even though the previous version of the policy statement only contemplated whether a defendant was the "only available caregiver" of minor children, spouses, and registered partners. *See, e.g.*, United States v. Bucci, 409 F. Supp. 3d 1, 2 (D. Mass 2019) (granting compassionate release to defendant to care for his mother). However, the availability or lack of alternate caregivers is central to determining whether extraordinary and compelling reasons exist. *Compare* United States v. Daham, 2021 WL 279971, at *2 (D. Me. 2021) (granting compassionate release to defendant who was the sole caretaker for two elderly parents with pre-existing health conditions), *with* United States v. Rodríguez-Berrios, 2022 WL 2437711, at *5 (D.P.R. 2022) (denying compassionate release

when defendant had several siblings who could potentially care for defendant's mother and aunt).

Here, Mr. Figueroa has not met his burden to establish that he is the sole person who can take care of his elderly mother. The Presentence Investigation Report ("PSR") prepared for his sentencing notes that he has several siblings, including a brother who lives in Caguas, Puerto Rico, and two other siblings who live in Miami, Florida. (Docket No. 81 ¶ 42). Defendant does not explain why his siblings are unable to care for his mother, simply stating that they have challenges such as "mental health issues in the family, spouses requiring care, or geographical distance." (Docket No. 131 at 14). Without more evidence as to these challenges, the Court cannot find that these other family members are unable to provide adequate care. Because Mr. Figueroa's mother has access to several other able caretakers, he is not the "only available caregiver" and does not present an extraordinary and compelling reasons for release. *See* United States v. Chévere-Gonzalez, Case No. 97-cr-245-7, Docket No. 1124 (denying compassionate release on caregiving grounds when defendant had two siblings residing in Puerto Rico who could take care of his mother).

Taken in combination, Defendant's medical and family circumstances do not indicate that extraordinary and compelling reasons for release exist. Moreover, as discussed further below,

compassionate release is not warranted because the section 3553(a)

factors counsel against it.

## B. Defendant has not shown the section 3553(a) factors warrant release.

A district court need only address the section 3553(a) factors

if it has already found there is an extraordinary and compelling

reason favoring release. <u>Texeira-Nieves</u>, 23 F.4th at 52. However,

a section 3553(a) analysis nonetheless may aid a reviewing court.

<u>Id.</u> Not every factor needs to be addressed mechanically, and it is

assumed that section 3553(a) factors left unaddressed were simply

unpersuasive. <u>Saccocia</u>, 10 F.4th at 10. Of relevance in this case

given the submissions of the parties are the nature and

circumstances of the offense, the history and characteristics of

the defendant, and the effect of the sentence imposed.

### i.   The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant

Defendant was convicted for attempting to pay for sexual acts

with a minor. (Docket No. 81 ¶ 13). Specifically, as detailed in

the PSR, he sought to buy oral sex from an eleven-year-old girl,

<u>id.</u> ¶ 13, although he later pled guilty to a lesser included

offense of attempting sex trafficking of a minor over the age of

fourteen years old. (Docket No. 78). In his plea agreement,

Defendant also agreed that he intended to pay for and engage in

sexual intercourse with the minor if he had enjoyed oral sex with

her. (Docket No. 76 at 11-13). Sex crimes involving minors horrifically victimize some of the most vulnerable members of society. Accordingly, some courts have rejected compassionate release in cases involving defendants who abuse or attempt to abuse children. *See, e.g.*, United States v. Cates, 2020 WL 6136212 (D. Me. 2020) (denying compassionate release to defendant in child-pornography case with a prior history of sexual conduct with minors); United States v. Tinsley, 2021 WL 5084691 (D. Md. 2021) (declining to reduce sentence of defendant who committed "undeniably serious" offense of trafficking a fifteen-year-old girl). The Court further notes with concern that while Defendant's biological mother referenced his repentance in a letter to the Court, (Docket No. 131-3 at 8), Mr. Figueroa himself has not indicated in his pleadings that he takes responsibility for his offense conduct. *See* Rodríguez-Berrios, 2022 WL 2437711, at *5 (recognizing defendant's lack of discussion of offense of conviction when considering section 3553(a) factors).

As to his history and characteristics, Mr. Figueroa notes that he has not been involved in any disciplinary infractions while incarcerated. (Docket No. 131 at 2). He further presents certificates and accolades earned while serving his sentence, including achievements for tutoring, engineering, and civility and professionalism. Id. at 9-10; (Docket No. 131-2 at 1-5). These

efforts are laudable. However, rehabilitation alone is insufficient to warrant Defendant's release. United States v. Sepulveda, 34 F.4th 71, 77 (1st Cir. 2022). The Court also notes that Defendant has no prior criminal history and complied with the terms of release prior to sentencing, (Docket No. 81 ¶¶ 36-39), which favor compassionate release. *See, e.g.*, United States v. Gravens, 2020 WL 7390514, at *9 (D.S.D. 2020) (granting sentence reduction to "model inmate" defendant with no criminal history, when other factors also favored release).

### ii.  The Sentence Imposed

Section 3553(a) instructs courts to consider the need for the sentence imposed to, among other things, "reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." 18 U.S.C. § 3553(a)(2)(A). Further, district courts may consider "the kinds of sentences available," id. § 3553(a)(3), and "the need to avoid unwarranted sentence disparities" among similarly situated defendants. Id. § 3553(a)(6).

In support of his *Motion for Compassionate Release*, Mr. Figueroa argues that his sentence is inappropriately long, basing his argument on a report issued by the USSC regarding child pornography offenses. (Docket No. 107 at 8). He also claims that he is a "non-contact" offender who is unlikely to recidivate and

would meaningfully contribute to satellite engineering projects if released. Id. As to Defendant's first argument, the Court notes that the citation to the USSC report is inapposite, as it examines a different set of offenses sentenced pursuant to U.S.S.G. § 2G2.2, rather than the Guideline that Mr. Figueroa was sentenced under, section 2G1.3(a)(3). *Compare* (Docket No. 107-16 at 10), *with* (Docket No. 81 ¶ 23). Similarly, Defendant's citation to recidivism rates also relates to child pornography offenders who do not themselves produce child sexual abuse material and is inapposite here. *See* (Docket No. 107-16 at 18-23).

Mr. Figueroa also argues that home detention would be an appropriate alternate sentence. (Docket Nos. 107 at 8 and 131 at 14-19). However, "section 3582(c)(1)(A) does not afford a district court the authority to order a defendant to serve his unmodified sentence at home." Texeira-Nieves, 23 F.4th at 59. While the Court could reduce Defendant's sentence, impose a term of supervised release, and order home confinement as a condition of supervised release, id., it declines to do so in this case because a sentence reduction would contravene the section 3553(a) factors, as discussed in more detail below.

Congress' imposition of a ten-year mandatory minimum sentence for Defendant's offense of conviction is "instructive insofar as it indicates the kind of sentence that Congress believes to be

necessary to reflect the seriousness of defendant's conduct." Tinsley, 2021 WL 5084691, at *16. As both parties note, Defendant has served approximately twenty percent of his total sentence, having been incarcerated for about two years. (Docket Nos. 122 at 2 and 131 at 2). Given these facts, compassionate release would not reflect the seriousness of the offense, promote respect for the law, or provide just punishment. *See, e.g.*, Rodríguez-Berrios, 2022 WL 2437711, at *6 (denying sentence reduction to defendant who served eighteen years of a life sentence); United States v. Nyuon, 2020 WL 7029873, at *4 (D.S.D. 2020) (denying compassionate release to defendant who committed crimes involving child sex trafficking when he had served less than thirty-five percent of his statutory term). Moreover, reducing Mr. Figueroa's sentence below the mandatory minimum term of imprisonment could cause unwarranted sentencing disparities. United States v. Salinas-Acevedo, 2021 WL 5919786, at *3 (D.P.R. 2021) (finding that reducing sentence below mandatory minimum would be inappropriate under section 3553(a)(2) and would cause a sentencing disparity under section 3553(a)(6)).

## IV.  CONCLUSION

For the foregoing reasons, the Court ORDERS that Defendant Carlos Figueroa-Gibson's *Motion Seeking Appointment of Counsel and*

*Reduction in Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)* at Docket No. 107 is **DENIED WITHOUT PREJUDICE.**

   **IT IS SO ORDERED.**

   In San Juan, Puerto Rico, this 31st day of January 2024.


                              s/Raúl M. Arias-Marxuach
                              UNITED STATES DISTRICT JUDGE