**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>**Plaintiff,**<br><br>v.<br><br>CARLOS FIGUEROA-GIBSON,<br><br>**Defendant.** | **CRIM. NO. 16-802 (RAM)** |

**OPINION AND ORDER**

RAÚL M. ARIAS-MARXUACH, United States District Judge

Pending before the Court is Defendant Carlos Figueroa-Gibson's ("Defendant" or "Mr. Figueroa-Gibson") *Motion for a Reduction in Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)* ("*Motion for Compassionate Release*"). (Docket No. 137). For the reasons set forth below, the request for compassionate release and appointment of counsel is **DENIED WITHOUT PREJUDICE.**

**I.    BACKGROUND**

On December 21, 2016, a Grand Jury returned a one-count indictment charging Mr. Figueroa-Gibson with attempted sex trafficking of children, in violation of 18 U.S.C. §§ 1591(a)(1), 1591(b)(1), and 1594(a). (Docket No. 10). On January 25, 2018, Defendant pled guilty to the lesser included offense of attempted sex trafficking of a minor between the ages of fourteen and eighteen years, in violation of 18 U.S.C. § 1591(b)(1). (Docket No. 78). After deferring the sentencing hearing to allow Mr.

Criminal No. 16-802 (RAM)                                                    2

Figueroa-Gibson to complete his studies, the Honorable Daniel R. Domínguez sentenced Defendant on June 21, 2021, to 120 months' imprisonment.[1] (Docket Nos. 91 and 98). Following his release, Defendant must serve a supervised release term of five years. (Docket No. 98). Mr. Figueroa-Gibson's anticipated release date from the custody of the Bureau of Prisons ("BOP") is January 14, 2030.[2] To date, he has served approximately about 45.8% of his full term and 53.7% of the statutory term. (Docket No. 140 at 3).

On July 19, 2022, Defendant filed, *pro se*, his first *Motion for Compassionate Release* which the Court denied. (Docket No. 107 and 135). On January 30, 2026, Mr. Figueroa-Gibson filed, *pro se*, a second *Motion for Compassionate Release*. (Docket No. 137). In his motion, Mr. Figueroa-Gibson requested appointment of counsel and alleged he is the only available caregiver for his ninety-year-old mother which constitutes an extraordinary and compelling circumstances that warrants a reduction in his sentence. Id. at 2-10. Defendant further claimed that he has not been involved in any disciplinary infractions and has shown considerable rehabilitation. Id. He further asserted that the 18 U.S.C. §

---

[1] The case was assigned to the undersigned on January 10, 2024. (Docket No. 134).

[2] *See* BOP, *Inmate Locator*, https://www.bop.gov/inmateloc/ (last visited March 26, 2026).

3553(a) factors favor release. Id. at 6. Finally, appended to the *Motion for Compassionate Release* is: (1) a request for sentence reduction that Defendant submitted to the BOP on December 1, 2025, with a proposed release plan;[3] (2) certifications for courses taken while in BOP custody; and (3) letters from Defendant's mother, siblings, family members and previous co-workers. (Docket No. 137-1-5). Defendant also subsequently submitted some of his mother's medical records. (Docket No. 138).

On March 5, 2026, the United States of America (the "Government") filed a *Response in Opposition* to Defendant's petition arguing Mr. Figueroa-Gibson failed to show he is the only possible caretaker for his mother, that he lacks an extraordinary and compelling reason warranting release, and that the § 3553(a) factors weigh against his release. (Docket No. 140 at 5). The Government stated Mr. Figueroa-Gibson has five adult siblings and that he has failed to show any effort from any of them to secure assistance for their mother's needs or assume responsibility for her care. Id. at 6. The Government further posited that Defendant failed to show that his mother is incapacitated within the meaning of USSG § 1B1.13(b)(3)(C). Id. at 11. Finally, the Government

---

[3] On January 13, 2026, BOP responded to defendant's petition and denied the compassionate release. (Docket No. 140-1).

Criminal No. 16-802 (RAM)                                                          4

averred that Defendant's rehabilitation fails to meet the extraordinary and compelling standard, and that § 3553(a) factors, including but not limited to the serious nature and circumstances of Defendant's offense, weigh against his release. Id. at 16.

## II.  APPLICABLE LAW

Ordinarily, a court may not modify a term of imprisonment once it is imposed. *See* 18 U.S.C. § 3582(c). However, it may grant compassionate release to a defendant subject to certain requirements. Id. § 3582(c)(1)(A).

Pursuant to section 3582(c)(1)(A), a court may not modify a final sentence unless a defendant has "fully exhausted all administrative rights to appeal a failure of" the BOP to bring a motion for reduction of sentence on his behalf or if thirty days have elapsed "from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." Id. Even if these conditions are met, the district court must consider "the factors set forth in section 3553(a) to the extent that they are applicable," and there **must still be** "extraordinary and compelling reasons" warranting a reduction. Id. § 3582(c)(1)(A)(i); *see also* United States v. Saccocia, 10 F.4th 1, 4 (1st Cir. 2021) (providing general principles for evaluating compassionate release motions). The defendant bears the burden of establishing that extraordinary and compelling reasons exist, that he is no longer a danger to the

community, and that the section 3553(a) factors favor release. United States v. Galiany-Cruz, 2023 WL 6458535, at *1 (1st Cir. 2023); United States v. Miranda-Rojas, 2023 WL 7181650, at *1 (1st Cir. 2023).

In United States v. Ruvalcaba, the First Circuit addressed whether district courts were bound by the Sentencing Guidelines Policy Statement when deciding motions for compassionate release. 26 F.4th 14 (1st Cir. 2022). Because the most relevant policy statement at the time Ruvalcaba was decided had not been amended since November 2018, the First Circuit held that district courts had "discretion, unconstrained by any policy statement currently in effect, to consider whether a prisoner's particular reasons are sufficiently extraordinary and compelling to warrant compassionate release." Id. at 23 (citation omitted).

However, on November 1, 2023, the United States Sentencing Commission's ("USSC") policy statement on motions for compassionate release initiated by prisoners took effect. *See* U.S.S.G. § 1B1.13. Since the USSC has provided updated guidance, "district courts addressing such motions not only will be bound by the statutory criteria but also will be required to ensure that their determinations of extraordinary and compelling reasons are consistent with that guidance." Ruvalcaba, 26 F.4th at 23-24. The First Circuit expects district courts "to take heed of" the new

Criminal No. 16-802 (RAM)                                                 6

policy statement when determining whether a defendant is eligible for compassionate release. United States v. Rivera-Rodríguez, 75 F.4th 1, 18 n.22 (1st Cir. 2023). Accordingly, the "window" in during which Ruvalcaba's holding regarding policy statements controlled and district courts were granted broad discretion has "clos[ed]." *See* United States v. Gonzalez, 68 F.4th 699, 704 n.2 (1st Cir. 2023) (noting the gap in guidance on prisoner-initiated motions and the then-upcoming amendments to U.S.S.G. § 1B1.13).

The policy statement outlines six circumstances that individually or in combination may constitute extraordinary and compelling reasons warranting relief: (1) the defendant's medical circumstances; (2) the defendant's age; (3) the defendant's family circumstances; (4) whether defendant was a victim of abuse while incarcerated; (5) "other reasons" similar in gravity to the preceding four reasons; and (6) whether the defendant received an unusually long sentence. U.S.S.G. § 1B1.13(b). Moreover, the court must determine that the "defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." Id. § 1B1.13(a)(B)(2).

### III. ANALYSIS

As a threshold matter, it appears that Defendant has met the administrative exhaustion requirement of section 3582(c)(1)(A). Mr. Figueroa-Gibson attached a request for sentence reduction that

Defendant submitted to the BOP on December 1, 2025. (Docket No. 137-1). On January 13, 2026, the BOP responded to Defendant's petition and denied the compassionate release. (Docket No. 140-1). The Government presents no argument or evidence to the contrary. The Court therefore proceeds to evaluating the merits of the *Motion for Compassionate Release*. *See* United States v. Quirós-Morales, 83 F.4th 79, 84 (1st Cir. 2023) (so doing); United States v. Texeira-Nieves, 23 F.4th 48, 53 (1st Cir. 2022) (holding the administrative exhaustion requirement is a "non-jurisdictional claim-processing rule").

The Court denies Mr. Figueroa-Gibson's *Motion for Compassionate Release* for two reasons. First, he fails to present extraordinary and compelling circumstances, either individual or in combination, that would justify release. Second, he has not shown that release is warranted given the factors set out in 18 U.S.C. § 3553(a). Defendant's request for appointment of counsel is denied as moot since defense counsel entered an appearance on Mr. Figueroa-Gibson's behalf on October 26, 2022, and still appears on the record as retained counsel to be noticed. *See* (Docket No. 111).

## A. Defendant does not present extraordinary and compelling reasons justifying release.

Based on Defendant's petition, the only possible extraordinary and compelling reason in this case is his family circumstances.

Extraordinary and compelling reasons exist when a defendant's parent is incapacitated and "the defendant would be the **only available caregiver** for the parent." U.S.S.G. § 1B1.13(b)(3)(C) (emphasis added). Prior to November 1, 2023, district courts found the need to care for an ailing parent could present an extraordinary and compelling circumstance, even though the previous version of the policy statement only contemplated whether a defendant was the "only available caregiver" of minor children, spouses, and registered partners. *See, e.g.*, United States v. Bucci, 409 F. Supp. 3d 1, 2 (D. Mass 2019) (granting compassionate release to defendant to care for his mother). However, the availability or lack of alternate caregivers is central to determining whether extraordinary and compelling reasons exist. *Compare* United States v. Daham, 2021 WL 279971, at *2 (D. Me. 2021) (granting compassionate release to defendant who was the sole caretaker for two elderly parents with pre-existing health conditions), *with* United States v. Rodríguez-Berrios, 2022 WL 2437711, at *5 (D.P.R. 2022) (denying compassionate release when

defendant had several siblings who could potentially care for defendant's mother and aunt).

Here, Mr. Figueroa-Gibson has failed to establish that he is the sole person who can take care of his elderly mother. Defendant attached letters from his siblings purportedly explaining why they cannot care for their mother. (Docket No. 137-5). Defendant's brother, David Figueroa-Gibson, is a resident of Caguas, Puerto Rico, and maintains he is unable to care for his mother because he cares for his wife who suffers from mental illness. Id. at 5e.[4] Defendant's sister, Lynn Figueroa-Cabrera, is a resident of Naples, Florida, and states that she cannot care for her mother because she cares for her daughter who suffers from mental illness.[5] Id. at 5f. Defendant's sister, Loree Anne Figueroa-Gibson, is a resident of Aguadilla, Puerto Rico and does not indicate why, besides the distance, she cannot take care of their mother.[6] Id. at 5g. Defendant's brother, Edward Luis Figueroa-Gibson, is a resident of Florida and alleges that he cannot take care of his mother because of his business, family and community

---

[4] While Defendant's brother does not specify his wife's mental illness, Mr. Figueroa-Gibson states that she suffers from schizophrenia. (Docket No. 137 at 5).

[5] While Defendant's sister does not specify her daughter's mental illness, Mr. Figueroa-Gibson states that she also suffers from schizophrenia. Id.

[6] Defendant notes that his sister suffers from a series of health issues, including Brittle Bone Disease and circulation issues. Id.

commitments which limit his ability to return to Puerto Rico for extended periods of time. Id. at 5h. Finally, Defendant's biological mother and adoptive sister, Lisa Carol Figueroa-Gibson, lives in North Carolina and explains that she cannot care for her mother because her husband suffers from heart problems. Id. at 5k.

While Defendant's siblings establish difficulties and limitations to providing care for their mother, these do not rise to the extraordinary and compelling circumstances standard. It is common that families struggle to provide and coordinate care for aging parents, and the Court does not doubt this feat has become more difficult after Mr. Figueroa-Gibson's incarceration given that he previously resided with and cared for his mother. However, "loved ones are often adversely impacted by a family member's incarceration and must make necessary and inconvenient life adjustments during that individual's incarceration. These often-unavoidable consequences, however, do not create extraordinary circumstances." United States v. González, No. 17-CR-60223, 2021 WL 4066897, at *5. Even Defendant's brother, David Figueroa Gibson, claims that their "family, along with local organizations, is prepared to offer a strong support network to assist with [Defendant's] reintegration and provide ongoing guidance." (Docket No. 137 at 5e). This suggests that a network exists which could also be mobilized to assist their elderly mother without requiring

Mr. Figueroa-Gibson's release. In fact, neither Defendant nor his siblings, at least some of whom are employed professionals, have demonstrated the impossibility of coordinating care amongst themselves or procuring it elsewhere.

Because Mr. Figueroa-Gibson's mother has access to several other potential caretakers, he is not the "only available caregiver" and does not present an extraordinary and compelling reasons for release. *See* United States v. Chévere-Gonzalez, Case No. 97-cr-245-7, Docket No. 1124 (denying compassionate release on caregiving grounds when defendant had two siblings residing in Puerto Rico who could take care of his mother).[7]

## B. Defendant has not shown the section 3553(a) factors warrant release.

A district court need only address the section 3553(a) factors if it has already found there is an extraordinary and compelling reason favoring release. Texeira-Nieves, 23 F.4th at 52. However, a section 3553(a) analysis nonetheless may aid a reviewing court. Id. Not every factor needs to be addressed mechanically, and it is assumed that section 3553(a) factors left unaddressed were simply unpersuasive. Saccocia, 10 F.4th at 10. Of relevance in this case given the submissions of the parties are the nature and

---

[7] Having established access to alternative caretakers, the Court need not address the issue of whether Defendant's mother meets the definition of "incapacitation" under USSG § 1B1.13(b)(3)(C).

Criminal No. 16-802 (RAM)                                                12

circumstances of the offense, the history and characteristics of the defendant, and the effect of the sentence imposed.

   i. The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant

Defendant was convicted for attempting to pay for sexual acts with a minor. (Docket No. 81 ¶ 13). Specifically, as detailed in the PSR, he sought to buy oral sex from an eleven-year-old girl, id. ¶ 13, although he later pled guilty to a lesser included offense of attempting sex trafficking of a minor over the age of fourteen years old. (Docket No. 78). In his plea agreement, Defendant also agreed that he intended to pay for and engage in sexual intercourse with the minor if he had enjoyed oral sex with her. (Docket No. 76 at 11-13). Sex crimes involving minors victimize some of the most vulnerable members of society. Accordingly, some courts have rejected compassionate release in cases involving defendants who abuse or attempt to abuse children. See, e.g., United States v. Cates, 2020 WL 6136212 (D. Me. 2020) (denying compassionate release to defendant in child-pornography case with a prior history of sexual conduct with minors); United States v. Tinsley, 2021 WL 5084691 (D. Md. 2021) (declining to reduce sentence of defendant who committed "undeniably serious" offense of trafficking a fifteen-year-old girl).

As to his history and characteristics, Mr. Figueroa-Gibson notes that he has not been involved in any disciplinary infractions while incarcerated. (Docket No. 137 at 6). He further presents certificates and accolades earned while serving his sentence, including achievements for tutoring, engineering, and civility and professionalism. (Docket No. 137-3-4). These efforts are laudable. However, rehabilitation alone is insufficient to warrant Defendant's release. United States v. Sepulveda, 34 F.4th 71, 77 (1st Cir. 2022). The Court also notes that Defendant has no prior criminal history, has accepted responsibility for his actions, and complied with the terms of release prior to sentencing, (Docket No. 81 ¶¶ 36-39), which favor compassionate release. *See, e.g.,* United States v. Gravens, 2020 WL 7390514, at *9 (D.S.D. 2020) (granting sentence reduction to "model inmate" defendant with no criminal history, when other factors also favored release).

### ii.  The Sentence Imposed

Section 3553(a) instructs courts to consider the need for the sentence imposed to, among other things, "reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." 18 U.S.C. § 3553(a)(2)(A). Further, district courts may consider "the kinds of sentences available," id. § 3553(a)(3), and "the need to avoid unwarranted

sentence disparities" among similarly situated defendants. Id. § 3553(a)(6).

In support of his *Motion for Compassionate Release*, Mr. Figueroa-Gibson argues that his rehabilitation efforts show that his sentence has achieved the goals of individual deterrence and protection of the public. (Docket No. 137 at 7). Defendant also claims that the purpose of general deterrence was achieved when he was arrested and sentenced, and that further imprisonment serves no general effect. Id. Mr. Figueroa-Gibson posits that he is unlikely to recidivate, that reductions in sentence lower chances of recidivism,[8] and that he would meaningfully contribute to engineering projects if released. Id. Lastly, Mr. Figueroa-Gibson also argues that home detention would be an appropriate alternate sentence. (Docket Nos. 107 at 8 and 131 at 14-19).

Congress' imposition of a ten-year mandatory minimum sentence for Defendant's offense of conviction is "instructive insofar as it indicates the kind of sentence that Congress believes to be necessary to reflect the seriousness of defendant's conduct." Tinsley, 2021 WL 5084691, at *16. Defendant has served approximately 45.8% of his full term and 53.7% of the statutory term, having been incarcerated for about four and a half years.

---

[8] Defendant supports this assertion with recidivism statistics from the U.S. Department of Justice's 2022 First Step Act Annual Report.

(Docket No. 140 at 3). Despite Mr. Figueroa-Gibson's laudable rehabilitation efforts, given these facts, compassionate release would not reflect the seriousness of the offense, promote respect for the law, or provide just punishment. *See, e.g.*, Rodríguez-Berrios, 2022 WL 2437711, at \*6 (denying sentence reduction to defendant who served eighteen years of a life sentence); United States v. Nyuon, 2020 WL 7029873, at \*4 (D.S.D. 2020) (denying compassionate release to defendant who committed crimes involving child sex trafficking when he had served less than thirty-five percent of his statutory term). Moreover, reducing Mr. Figueroa-Gibson's sentence below the mandatory minimum term of imprisonment could cause unwarranted sentencing disparities. United States v. Salinas-Acevedo, 2021 WL 5919786, at \*3 (D.P.R. 2021) (finding that reducing sentence below mandatory minimum would be inappropriate under section 3553(a)(2) and would cause a sentencing disparity under section 3553(a)(6)).

As to home incarceration, "section 3582(c)(1)(A) does not afford a district court the authority to order a defendant to serve his unmodified sentence at home." Texeira-Nieves, 23 F.4th at 59. While the Court could reduce Defendant's sentence, impose a term of supervised release, and order home confinement as a condition of supervised release, id., it declines to do so in this case

Criminal No. 16-802 (RAM)                                        16

because a sentence reduction is not warranted given the section 3553(a) factors, as discussed above.

## IV.  CONCLUSION

For the foregoing reasons, the Court **ORDERS** that Defendant Carlos Figueroa-Gibson's *Motion for a Reduction in Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)* at Docket No. 137 is **DENIED WITHOUT PREJUDICE.**

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 20th day of April 2026.

s/Raúl M. Arias-Marxuach
UNITED STATES DISTRICT JUDGE